IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PREVOR,<br>Moulin de Verville<br>95760 Valmondois – France,<br><br>               Plaintiff,<br><br>v.<br><br>UNITED STATES FOOD<br>AND DRUG ADMINISTRATION,<br>200 Independence Avenue, S.W.<br>Washington, DC 20201,<br><br>               Defendant. | Case No. _____ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff PREVOR avers and alleges as follows:

## NATURE OF ACTION

1. This is an action for declaratory and injunctive relief arising out of the legally erroneous decisions by Defendant United States Food and Drug Administration (FDA) designating Plaintiff's product, Diphoterine® Skin Wash (hereinafter, "DSW"), as a drug-device combination product with a "drug" primary mode of action. As a result, FDA's Center for Drug Evaluation and Research (CDER) is regulating DSW. DSW is a liquid substance propelled from a canister by pressurized gas. FDA erroneously determined that the liquid is a "drug" and the combination of the liquid and canister should be regulated as a drug. Plaintiff brings this action to vacate FDA's determination.

2. DSW must legally be regulated as a "device" with product jurisdiction in Defendant FDA's Center for Devices and Radiological Health (CDRH). In the alternative, DSW should be declared a drug-device combination product where the liquid has a "device" primary mode of action with primary product jurisdiction in CDRH.

3. In making its determination, Defendant disregarded key scientific information in the record. Defendant's determination also implemented, without complying with the Administrative Procedure Act's (APA) requirements for establishing new rules of general applicability, a novel standard for determining product classification not found in or supported by law or regulation, and which is inconsistent with decades of precedent established by FDA.

## PARTIES

4. Plaintiff PREVOR is a corporation duly organized and existing under the laws of France, with its principal place of business in Moulin de Verville, Valmondois F-95760, France. PREVOR has worked for over 50 years to investigate and develop methods to avoid risks associated with the use of chemical products. PREVOR developed DSW to help prevent and minimize accidental chemical burn injuries to workers exposed to hazardous chemicals.

5. Defendant FDA is an agency within the U.S. Department of Health and Human Services, an Executive Department of the United States government.

## JURISDICTION AND VENUE

6. This action arises under the FDCA, 21 U.S.C. §§ 301, the APA, 5 U.S.C. §§ 551-559, 701-706, and 28 U.S.C. §§ 1361, 2201-2202. The declaratory,

2

injunctive, and other relief requested by Plaintiff is authorized by 5 U.S.C. §§ 702 and 706, and 28 U.S.C. §§ 1361, 1651, 2201-2202, and this Court's general equitable powers.

7. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1361.

8. This Court has personal jurisdiction over Defendant FDA because it resides within this District.

9. Venue in this District is proper under 28 U.S.C. § 1391(e).

## STATUTORY AND REGULATORY BACKGROUND

10. In general, a company must obtain marketing authorization from FDA before it can market a new drug or a new device. If a product is a "device," with exceptions not applicable here, it is subject to the regulatory authority of CDRH. If a product is a "drug," with certain exceptions, it is subject to the regulatory authority of CDER.

11. The FDCA defines a "device" as an instrument, apparatus, implement, machine, or other similar or related article, which is, among other things:

   a. intended for use in the diagnosis of disease or other conditions, or in the cure, mitigation, treatment, or prevention of disease,

   b. which does not achieve its primary intended purposes through chemical action within or on the body of man or other animals, and

   c. which is not dependent upon being metabolized for the achievement of its primary intended purposes. 21 U.S.C. § 321(h).

12. The FDCA defines a "drug" as an article "intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals." Id. § 321(g).

13. A "combination product" is a product that is comprised of two or more regulated components, such as a drug and device, which are physically, chemically, or otherwise combined or mixed and produced as a single entity, or a product that includes two or more separate products packaged together in a single package or as a unit. 21 C.F.R. § 3.2(e). Under the FDCA, FDA must designate the agency component with primary jurisdiction over a combination product based on the product's "primary mode of action." If the primary mode of action is that of a device, CDRH shall have primary jurisdiction; if the primary mode of action is that of a drug, CDER shall have primary jurisdiction.

14. A product's "mode of action" is the means by which it achieves an intended therapeutic effect or action. A combination product typically has more than one mode of action. A constituent part of a combination product has a "device" mode of action if it meets the statutory definition of a "device" in the FDCA. Id. § 3.2(k)(2). A constituent part of a product has a "drug" mode of action if it meets the definition of a drug contained in the FDCA, and if it has neither a device mode of action nor a biological product mode of action. Id. § 3.2(k)(3).

15. A product's "primary mode of action" is the mode of action that provides the most important therapeutic action of the combination product, meaning that it is

4

expected to make the "greatest contribution" to the overall intended therapeutic effects of the product. 21 C.F.R. § 3.2(m).

16. If it is not possible to determine with reasonable certainty which mode of action provides a greater contribution than any other mode of action to the overall therapeutic effect, FDA is supposed to assign the product to the Center that regulates other products that present "similar questions" of safety and effectiveness. Id. § 3.4(b).

17. A sponsor can file a Request for Designation (RFD) with FDA's Office of Combination Products (OCP) to obtain a determination from FDA as to which Center will have primary jurisdiction over the product. Id. § 3.7(a). FDA must specify in a Letter of Designation the Center that will have primary jurisdiction for the premarket review and regulation of the product. Id. § 3.8(b).

18. A primary mode of action analysis is inapplicable under the FDCA if a product comprises of only one component – that is, a single-entity product (or non-combination product). For single-entity products, OCP makes a determination as to the classification of the product based upon the FDCA definitions applicable to the product, which in this instance are the "drug" or "device" definitions.

19. The APA requires executive agencies to follow certain processes when formulating, amending, or repealing statement of general or particular applicability and future effect to interpret law or policy. Agencies must conduct notice-and-comment rulemaking when promulgating or amending certain rules. 5 U.S.C. § 553(b)-(c).

20. The FDCA also requires FDA to ensure public participation before implementing changes to guidance that amend its interpretations of a statute or regulation, or of its longstanding policy, that are of more than a minor nature. 21 U.S.C. § 371(h)(1)(C).

## FACTUAL BACKGROUND

### *Description and Intended Use of DSW*

21. DSW consists of a liquid substance contained within its own cartridge inside a canister. DSW is propelled by pressurized gas from the canister nozzle once the canister is activated. It is an odorless, colorless liquid comprised of approximately 96% water and 4% diphoterine, a water-soluble molecule. DSW is supplied sterile packaged in a 5-liter, stand-alone portable cylinder propelled by carbon dioxide ($CO_2$) (approximately the size of a fire extinguisher). There are two other configurations, consisting of 100 and 200 ml aerosol canisters propelled by nitrogen. The larger container is designed for removing more extensive chemical splashes exposing a larger area of the body. The small containers are designed for smaller exposures involving a hand or a foot.

22. DSW is intended to be used in the industrial setting as a "first response" method. Its purpose is to help prevent and minimize chemical burn injuries that occur due to accidental exposure to chemicals. DSW works to: (1) remove splashes of acidic or basic substances from the skin by physically and mechanically washing the chemicals away from the skin, and (2) neutralize acids and bases. Its purpose is primarily achieved by spraying DSW onto the skin to physically and mechanically remove or wash away the

6

offensive chemical from the skin. A secondary purpose is to neutralize the acids and bases that are washed off the skin. The first use is a "physical/mechanical" effect, which the record establishes comprises more than 90% of DSW's overall intended purpose. The second use is a "chemical" effect, which comprises less than 10% of DSW's overall intended purpose. DSW is non-irritating to the eye/skin, non-sensitizing, non-toxic, non-mutagenic, and is not absorbed through the skin.

23. DSW works similarly to water showers both in intended purpose and effect. DSW is intended to be a substitute for water showers in the workplace. Water showers are the standard of care, and the most commonly used method, to prevent or minimize chemical burns in industrial settings. When using a water shower, the running water physically pushes away and removes the offending chemical from the surface of the skin. This physical/mechanical action helps to limit the skin's exposure to the harmful chemical, and it is primarily how chemical burns are prevented.

24. DSW has been marketed outside the United States since 1996. It is registered/licensed as a medical device in all jurisdictions in which it is sold, including Europe, Canada, Brazil, and Australia.

### *Administrative History: FDA Designated DSW as a Drug-Device Combination and Assigned Primary Jurisdiction to CDER*

25. On August 13, 2009, Plaintiff submitted an RFD to OCP recommending that FDA determine that DSW is a "device" and assign jurisdiction of DSW to CDRH for premarket review and regulation. As part of this RFD, Plaintiff submitted data and information that demonstrate DSW's primary intended purpose is physical/mechanical

(that is, device-like) and not chemical (or drug-like). The uncontradicted data show that over 90% of the overall intended effect of the product comes from a physical washing effect, and that less than 10% of the intended effect comes from a chemical neutralization effect.

26. Disregarding this and other information contained in the RFD, on October 16, 2009, OCP issued a Letter of Determination (hereafter "OCP Letter") wrongly concluding that DSW is a drug-device combination product in which the liquid is the "drug" constituent part and the canister is the "device" constituent part. OCP further erred in concluding that DSW has a "drug" primary mode of action and in assigning primary jurisdiction of the product to CDER for regulation. OCP's determination was based on the erroneous and unsubstantiated conclusion that the liquid has "two" primary intended purposes, one of which is chemical and the other of which is physical. This decision was arbitrary and capricious both because it is inconsistent with the evidence and because it did not provide a reasoned basis for its conclusion. Indeed, nowhere in the OCP Letter does FDA explain the basis for determining that the product has "two" primary intended purposes when the uncontradicted data show DSW's predominant intended purpose is physical. Neither did OCP even discuss in its letter the studies submitted with the RFD that show that the primary intended purpose for DSW is physical.

27. The Plaintiff's RFD cited various precedents in which similar products to DSW had been regulated as devices by FDA. Without offering any explanation other

than to note that the products differed in some way from DSW, OCP ruled that none of these precedents was applicable.

28.   To support its RFD, PREVOR offered to submit a CD showing how DSW functioned. OCP refused to receive or review this evidence.

29.   On March 24, 2010, in a supervisory request for review pursuant to 21 C.F.R. § 10.75, Plaintiff requested that FDA's Office of Special Medical Programs (OSMP) reconsider the erroneous decision by OCP. Plaintiff submitted background correspondence, product information, scientific information, a CD with a visual demonstration, and legal arguments. Six months after the request, on September 16, 2010, Plaintiff met with Defendant to provide additional information and discussion about the product. Plaintiff provided supplemental materials on December 2, 2010, and March 24, 2011.

30.   More than a year after Plaintiff's request for reconsideration had been pending before FDA, on April 25, 2011, FDA's OSMP issued a 6-page letter affirming OCP's designation of DSW as a drug-device combination product with a "drug" primary mode of action with primary jurisdiction assigned to CDER for premarket review and regulation (hereafter "OSMP Letter"). The OSMP letter reiterated OCP's finding that the DSW liquid has two "primary" intended purposes and a "drug" primary mode of action.

### *DSW is a "Device," and Defendant's Jurisdictional Determination is Arbitrary, Capricious, and Contrary to Law*

31.   DSW is a liquid that meets the plain reading of the definition of a "device" contained in the FDCA because:

    a. it is intended to prevent a disease or condition (chemical skin burns resulting from exposure to acids and bases),

    b. it does not achieve its primary intended purposes through chemical action (the evidence in the record demonstrates that more than 90% of the intended effect is from the physical removal of the acid or base from the skin), and

    c. it is not dependent upon being metabolized (indeed it is not metabolized at all).

32.   Even if DSW were to be considered a drug-device combination product, it also satisfies the identically worded criteria for "device mode of action" contained in FDA's regulations for combination products.

33.   FDA's conclusion that DSW is not a "device" is arbitrary and capricious and not otherwise in accordance with the law. In the OCP Letter and the OSMP Letter, Defendant ignored the information provided in the record showing DSW's predominant "device" effect and misinterpreted the applicable legal standard. The record shows that when the canister is activated, DSW is propelled from the canister. Over 90% of the effect obtained from the product consists of the physical/mechanical removal of the acid or base from the skin, while the chemical effect of the product is a secondary intended purpose. As the test data show, displacement of a liquid (i.e., a harmful chemical on the skin) by another liquid (i.e., DSW) is the primary means by which DSW functions. This is a physical/mechanical effect, not chemical. Thus, physical removal is the primary intended purpose of the product, and it is achieved through mechanical means.

34. Ignoring that information and applying an incorrect statutory standard, Defendant wrongly determined that DSW has "two" primary intended purposes, one of which is the minimal, under 10%, chemical effect. While the record includes studies that clearly establish that the primary effect of DSW is physical, the OCP Letter contains no discussion of the studies, no questions regarding the studies, and no indication that FDA disagreed with the findings from the studies. The OSMP Letter raises for the first time, but relegates to a brief footnote, a mention that the studies submitted with the RFD are allegedly flawed. The uncontradicted evidence demonstrates that DSW's primary intended purpose is physical/mechanical.

35. Defendant erroneously ruled that a product does not meet the definition of a device if there is <u>any</u> chemical action within or on the body of man in achieving its primary effect. Specifically, in the OCP Letter, FDA stated that DSW cannot be a device if its effectiveness depends "at least in part" on chemical action. It reiterated a similar standard in its OSMP Letter, wrongly finding that DSW depends "even in part" on chemical action to achieve any of its primary intended purposes, or, worded another way, that DSW "depends on" chemical action to achieve its primary intended purposes. Nowhere in the legislative history or statute does Congress impose this standard; neither do the regulations and guidance that were in place at the time of these decisions articulate this standard. In June 2011, two months after the OSMP letter and over a year and a half after the OCP letter, FDA posted a draft guidance document titled "Classification of Products as Drugs and Devices & Additional Product Classification Issues," that for the first time articulates this new standard for classifying products. This guidance, however,

is merely a draft and is "not for implementation," and was not known to the public at the time of FDA's decisions on DSW.

36.     The statute clearly allows for a device to have <u>some</u> chemical effect so long as its "primary" intended purpose is not achieved through chemical action. The presence of a lesser chemical effect in a product does not mean that the product must be regulated as a drug and cannot be regulated as a device. Defendant's application of an "at least in part," "even in part," or "depends on" standard disregards the use of "primary" in 21 U.S.C. § 321(h) to describe a device's intended purposes. Defendant's application of this novel standard for defining a device is arbitrary and capricious, not otherwise in accordance with the law, in excess of authority granted by law, and constituted a change in legal requirement without observance of procedure required by law.

37.     FDA also acted contrary to law when it erroneously concluded that DSW solution has a "drug" mode of action. The regulations prohibit finding that a constituent part of a combination product has a "drug" mode of action if it also has a "device" mode of action. 21 C.F.R. § 3.2(k)(3). Because it is not in dispute that DSW has a device mode of action (the physical removal of a liquid off the skin), FDA should not have concluded that DSW has a drug primary mode of action.

38.     Defendant's decision conflicts with numerous prior decisions by FDA to regulate products as devices because their primary effect is physical, despite having some chemical effect. Plaintiff cited multiple examples of similar products regulated by FDA as devices, including: solutions for the management of wounds, artificial saliva, catheter lock flush solutions, solutions for rinsing preserved organs, sterile water for inhalation,

dental prophylaxis pastes with fluoride, intraocular fluids, personal lubricants, and resorbable bone void fillers.

39.  One example of a product with similar modes of action and intended use is Reactive Skin Decontamination Lotion (RSDL), a device intended to remove and neutralize chemicals from the skin. RSDL contains a chemical that counteracts chemical weapons that come in contact with the skin. RSDL is applied with a sponge. FDA specifically determined that RSDL is a device. The OCP Letter did not specifically address RSDL, or any of the precedents cited by Plaintiff, but simply stated that DSW differs from the cited precedents in "significant respects." In a flawed attempt to differentiate RSDL from DSW, the OSMP Letter analogized RSDL's sponge applicator used to scrub chemicals off skin to the "canister" in DSW, and then tried to distinguish DSW because the canister itself is not used to remove chemicals from the body.

40.  Plaintiff also provided FDA with details of other types of products, among them Silvaklenz Skin and Would Cleanser Solution and Heparin Catheter Lock Flush Solutions, and Medical Maggots, which have similar modes of action and that FDA regulates as devices. In its OCP Letter, FDA did not address these regulatory precedents with any detail, and in its OSMP Letter, FDA created a new standard in order to distinguish DSW from these devices.

41.  For the reasons alleged above, FDA violated the FDCA when it determined that the liquid in DSW is a "drug." FDA also erred in its conclusion that DSW is a combination product comprised of a drug (the solution) and a device (the canister) with a "drug" primary mode of action and primary jurisdiction assigned to CDER. The record

shows, however, that the most important therapeutic action of preventing or mitigating chemical burn injuries is provided by the liquid propelled under pressure by the canister, which mechanically washes the chemicals away from the skin. Under the FDCA, Defendant should have determined that DSW was to be regulated as a device.

## PLAINTIFF'S CLAIMS FOR RELIEF

### Count I
### (Action Not in Accordance with Law)

42. The allegations in paragraphs 1-41 are incorporated herein by reference.

43. Defendant illegally applied an erroneous standard for determining whether a product meets the definition of a "device" under the FDCA. Defendant used this novel standard to conclude that the DSW liquid meets the "drug" FDCA definition, and that DSW has a "drug" primary mode of action. Plaintiff is entitled to a finding that DSW is a device.

44. Defendant's decision was arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, in excess of authority granted by law, and without observance of procedure required by law.

### Count II
### (Disregard of Evidence)

45. The allegations in paragraphs 1-41 are incorporated herein by reference.

46. Defendant disregarded scientific evidence in the record weighing in favor of finding that DSW is a device. Defendant also disregarded the weight of the evidence,

and legal standard, showing that DSW has a device primary intended purpose. Defendant wrongly decided that DSW is a combination product and the DSW liquid is a drug.

47. Defendant's decision was arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, in excess of authority granted by law, and without observance of procedure required by law.

## Count III
## (Failure to Convene Rulemaking)

48. The allegations in paragraphs 1-41 are incorporated herein by reference.

49. Defendant failed to initiate rulemaking to add its new "at least in part," "even in part," and "depends on" requirements to whether the product is a device, as required by APA, 5 U.S.C. § 553(b)-(c).

50. Application of this novel standard without proper rulemaking was illegal because it changed, without reasoned explanation and without lawful notice-and-comment, Defendant's long-standing precedent for making product determinations. Defendant established new legal criteria for determining the regulatory classification of a product without complying with the APA requirements for establishing new rules of general applicability.

51. For the foregoing reasons, FDA's conduct was arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, in excess of authority granted by law, and without observance of procedure required by law.

## Count IV
## (Disparate Treatment)

52. The allegations in paragraphs 1-41 are incorporated herein by reference.

53. Defendant failed to apply the same standards that have been applied to similar sponsors and to similar products. Not only does regulatory precedent inform the decision to designate DSW as a device, it is a regulatory basis for forming jurisdictional determinations under 21 C.F.R. §§ 3.4(b) and 3.7(c)(3). As a legal, regulatory, and scientific matter, DSW should have been regulated in the same manner as similar products, i.e., as a device.

54. For the foregoing reasons, Defendant's decision to disregard precedent and to disparately treat Plaintiff and DSW was arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, in excess of authority granted by law, and without observance of procedure required by law.

## PRAYER FOR RELIEF

55. WHEREFORE, Plaintiff PREVOR prays that this Court grant the following relief:

    a. Injunctive relief and a Declaratory Judgment that:

        i. Vacates Defendant's finding that DSW's solution is a "drug" under 21 U.S.C. § 321(g) and not a device under 21 U.S.C. § 321(h);

        ii. Vacates Defendant's designation of DSW as a drug-device combination product with a "drug" primary mode of action;

      iii.    Declares that Defendant's jurisdictional determination was arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, in excess of authority granted by law, and without observance of procedure required by law; and

      iv.    Declares that DSW is a "device," or, in the alternative, that DSW is a drug-device combination product with a "device" primary mode of action.

  b.    Award Plaintiff its costs and attorneys' fees.

  c.    Such other relief as may be just and proper.

Dated: June 28, 2011

Respectfully submitted,

PREVOR

By: _____
Jeffrey N. Gibbs (D.C. Bar No. 385294)
John R. Fleder (D.C. Bar No. 176123)
Hyman, Phelps & McNamara, P.C.
700 13th Street, N.W., Suite 1200
Washington, D.C. 20005
Phone:  (202) 737-5600
Fax:  (202) 737-9329

*Attorneys for Plaintiff*