## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
　　　　　　　　　　　　　　　　　)
PREVOR,　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff,　　　　　　)
　　　　　　　　　　　　　　　　　)　　　Case No.  1:11-cv-01187 (RMC)
　　　　v.　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
UNITED STATES FOOD AND DRUG　　)
ADMINISTRATION,　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　Defendant.　　　　　　)
_____)

## DEFENDANT'S ANSWER TO COMPLAINT

Defendant, The United States Food and Drug Administration (FDA), through its

undersigned attorneys, hereby answers the allegations of Plaintiff's Complaint as follows:

1.  Defendant denies the allegations of paragraph 1, except as follows.  Defendant admits

that Plaintiff purports to seek the relief described in paragraph 1 but denies that it is entitled to

such relief.  Defendant also admits that Diphoterine Skin Wash (DSW) is a solution contained in

a gas-pressurized canister and that FDA determined that DSW consists of two regulated

components, a drug (the solution) and a device (the canister), and meets the definition of

"combination product."  Defendant further admits that FDA concluded that the drug (rather than

the device) constituent provides the "primary mode of action" for achieving DSW's intended

effects and, as a result, assigned the product to FDA's Center for Drug Evaluation and Research

(CDER) for premarket review to ensure product safety and effectiveness under the Federal Food,

Drug, and Cosmetic Act (FDC Act).

2.  Defendant denies the allegations of paragraph 2.

3.  Defendant denies the allegations of paragraph 3.

4.  Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 4.

5.  Defendant admits the allegations of paragraph 5.

6.  The allegations of paragraph 6 are legal conclusions to which no answer is required.

7.  The allegations of paragraph 7 are legal conclusions to which no answer is required.

8.  The allegations of paragraph 8 are legal conclusions to which no answer is required.

9.  The allegations of paragraph 9 are legal conclusions to which no answer is required.

10.  Defendant admits the allegations in the first sentence of paragraph 10.  Defendant denies the allegations in the second and third sentences of paragraph 10, except to admit that, generally, medical devices are regulated by FDA's Center for Devices and Radiological Health (CDRH), and drugs are regulated by CDER.

11.  Defendant admits that paragraph 11 provides a partial definition of "device" contained in the FDC Act.

12.  Defendant admits that paragraph 12 provides a partial definition of "drug" contained in the FDC Act.

13.  Defendant admits that the first sentence in paragraph 13 provides a partial definition of "combination product" contained in FDA's regulations.  Defendant admits the allegations in the second sentence of paragraph 13.  Defendant denies the allegations in the third sentence of paragraph 13, except to admit that, if the "primary mode of action" of a combination product is that of a device, the agency center charged with premarket review of devices has primary jurisdiction, which typically is CDRH and, if the "primary mode of action" of a combination

2

product is that of a drug, the agency center charged with premarket review of drugs has primary jurisdiction, which typically is CDER.

14.  Defendant admits the allegations in the first two sentences of paragraph 14. Defendant denies the allegations in the third and fourth sentences of paragraph 14, except to admit that a constituent part of a combination product can have one of three types of "mode of action" – a "biological product mode of action," a "device mode of action," or a "drug mode of action," as these terms are defined in FDA's regulations.  Defendant further admits that a constituent part of a combination product has a "device mode of action" if it meets the device definition in the FDC Act and it does not have a "biological product mode of action" and that a constituent part has a "drug mode of action" if it meets the drug definition in the FDC Act and it does not have a "biological product mode of action" or a "device mode of action."

15.  Defendant denies the allegations of paragraph 15, except to admit that a combination product's "primary mode of action" is the single "mode of action" (either "biological product mode of action," "device mode of action," or "drug mode of action," as these terms are defined in FDA's regulations) that provides the combination product's most important therapeutic action, which means the "mode of action" that is expected to make the greatest contribution to the overall intended therapeutic effects of the combination product.

16.  Defendant denies the allegations of paragraph 16, except to admit that FDA's regulations state:

> In some situations, it is not possible to determine, with reasonable certainty, which one mode of action will provide a greater contribution than any other mode of action to the overall therapeutic effects of the combination product.  In such a case, the agency will assign the combination product to the agency component that regulates other

3

> combination products that present similar questions of safety and
> effectiveness with regard to the combination product as a whole.  When
> there are no other combination products that present similar questions of
> safety and effectiveness with regard to the combination product as a
> whole, the agency will assign the combination product to the agency
> component with the most expertise related to the most significant safety
> and effectiveness questions presented by the combination product.

17.  Defendant admits the allegations in the first sentence of paragraph 17.  Defendant denies the allegations in the second sentence of paragraph 17, except to admit that, within 60 days of the filing date of a request for designation, either FDA's Office of Combination Products (OCP) will issue a designation letter, assigning the product at issue to a lead agency center for premarket review and regulation, or if OCP has not issued a designation letter within that time frame, the requester's recommendation of the lead center, if made in accordance with FDA regulations, will become the designated agency center.

18.  Defendant admits the allegations in the first sentence of paragraph 18.  Defendant denies the allegations in the second sentence of paragraph 18, except to admit that FDA relies on the definitions in the FDC Act to determine whether a single-entity (i.e., non-combination) product, or whether a constituent part of a combination product, is, e.g., a "drug" or "device."

19.  Defendant admits that the allegations of paragraph 19 contain a characterization of the Administrative Procedure Act and respectfully refers the Court to that statute for a full and complete statement of its content.

20.  Defendant denies the allegations of paragraph 20, except to admit that the FDC Act, 21 U.S.C. § 371(h)(1)(C), contains procedures for issuing guidance documents.

21.   Defendant admits that the allegations of paragraph 21 are consistent with the descriptions of DSW in Plaintiff's request for designation, dated August 13, 2009, submitted to OCP.

22.   Defendant admits that the allegations in the first three sentences of paragraph 22 are consistent with the descriptions of DSW in Plaintiff's request for designation.  Defendant denies the allegations in the fourth through seventh sentences of paragraph 22.  Defendant admits that the allegations in the eighth (and last) sentence of paragraph 22 are consistent with the descriptions of DSW in Plaintiff's request for review, dated March 24, 2010, and submitted to FDA's Office of Special Medical Programs (OSMP), challenging OCP's decisions, set forth in its designation letter, that found DSW to be a combination product and assigned DSW to CDER for premarket review to ensure product safety and effectiveness under the FDC Act.

23.   Defendant denies the allegations in the first sentence of paragraph 23.  Defendant admits that the allegations in the second sentence of paragraph 23 are consistent with the descriptions of DSW in Plaintiff's request for designation.  Defendant denies the allegations in the remaining sentences of paragraph 23.

24.   Defendant is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 24.

25.   Defendant denies the allegations of paragraph 25, except to admit that Plaintiff submitted a request for designation, dated August 13, 2009, to OCP, stating Prevor's belief that DSW is a single-entity (i.e., non-combination) product that should be regulated as a device by CDRH and describing Prevor's application of a "primary mode of action" analysis to determine whether DSW meets the definition of "device."

26.  Defendant denies the allegations of paragraph 26, except to admit that OCP issued a designation letter, dated October 16, 2009, to Prevor stating that, based on the information in Plaintiff's request for designation, DSW's solution meets the definition of "drug" and the canister meets the definition of "device," which makes DSW a combination product.  Defendant also admits that OCP's designation letter explained why DSW's solution does not meet the definition of "device" by stating that, based on the information in Plaintiff's request for designation, DSW's solution has two "primary intended purposes" (washing harmful chemicals off the skin and neutralizing harmful chemicals on the skin) and, because one of them (neutralization) is achieved "through chemical action within or on the body," the solution is excluded from the device definition.  Defendant further admits that OCP's designation letter concluded that DSW's solution (the drug constituent), in comparison to the canister (the device constituent), is expected to provide a greater contribution to the overall therapeutic effects of the combination product because, although the device sprays the drug onto the affected area, it is the drug that does the washing off and chemical neutralization of the chemical splash on the skin. Defendant admits that OCP's designation letter concluded that, because the product's drug constituent provides the combination product's "primary mode of action," DSW is assigned to CDER for premarket review to ensure product safety and effectiveness under the FDC Act.

27.  Defendant denies the allegations of paragraph 27, except to admit that Plaintiff's request for designation discussed several products, all of which, as stated in OCP's designation letter, OCP found to be different from DSW "in significant respects, including with regard to intended use, components, and/or ingredients."

6

28.  Defendant denies the allegations of paragraph 28, except to admit that the CD referenced in paragraph 28 was submitted to OSMP in Plaintiff's request for review, dated March 24, 2010, challenging OCP's decisions, but was not submitted to OCP with Plaintiff's request for designation, dated August 13, 2009.

29.  Defendant denies the allegations in the first sentence of paragraph 29, except to admit that Plaintiff submitted a request for review, dated March 24, 2010, to OSMP, challenging OCP's decisions, set forth in its designation letter, that found DSW to be a combination product and assigned DSW to CDER for premarket review.  Defendant admits the allegations in the remaining sentences of paragraph 29.

30.  Defendant denies the allegations of paragraph 30, except to admit that Plaintiff submitted a request for review, dated March 24, 2010, to OSMP and, as stated in OSMP's review letter, dated April 25, 2011, and in OCP's designation letter, OSMP and OCP determined that, based on the information in Plaintiff's request for designation, DSW's solution meets the definition of "drug" and is excluded from the definition of "device" because one of the solution's two "primary intended purposes" is achieved "through chemical action within or on the body." Defendant further admits that OSMP and OCP concluded that a greater contribution to the overall therapeutic effects of the combination product is expected to be provided by DSW's solution (the drug constituent) in comparison to the canister (the device constituent), meaning that the combination product as a whole has the "primary mode of action" of a "drug."

31.  Defendant denies the allegations of paragraph 31, except to admit that, based on information in Plaintiff's request for designation, DSW is intended to prevent chemical skin burns resulting from exposure to acids and bases and that FDA is not aware of information that

would suggest that the product is dependent on being metabolized to achieve its primary
intended purposes.

32. Defendant denies the allegations of paragraph 32, except to admit that OSMP's
review letter explained that DSW's solution could not have a "device mode of action, " which
requires in part that the constituent of a combination product meet the definition of "device,"
because the solution constituent does not meet the definition of "device."

33. Defendant denies the allegations of paragraph 33, except to admit that OSMP's
review letter stated that the studies described in Plaintiff's request for designation are "flawed
because they do not simulate the conditions of use and therefore do not appear to measure or
reflect the actions of the solution on the body."  Defendant also admits that OSMP's review
letter suggested that the studies described in Plaintiff's request for designation were irrelevant
because the studies were being used by Prevor to conduct an analysis on DSW's solution that
was inapplicable to the solution, namely a "primary mode of action" analysis, which Prevor then
used –  in place of the statutory definition of "device" – to contend that the solution was a
"device." Defendant further admits that OSMP's review letter explained that, based on the
information in Plaintiff's request for designation, DSW's solution itself does not comprise a
combination product (and therefore not subject to a "primary mode of action" analysis), and
confirmed that the "primary mode of action" analysis applicable to DSW compares the "mode of
action" of the solution (drug constituent) with the "mode of action" of the canister (device
constituent) to determine which "mode of action" is expected to make the greater contribution to
the overall intended therapeutic effects of the combination product.  Defendant also admits that,
in contrast to the definition of "primary mode of action," which describes a "single mode of

action" of a combination product, OSMP's review letter clarified for Prevor that the device definition's use of the phrase "primary intended purposes" means a device may have multiple primary intended purposes (none of which can be achieved "through chemical action within or on the body").

34.   Defendant denies the allegations of paragraph 34, except to admit that OSMP's review letter and OCP's designation letter stated that, based on the information in Plaintiff's request for designation, DSW's solution has two "primary intended purposes" (washing harmful chemicals off the skin and neutralizing harmful chemicals on the skin) and that DSW's solution does not meet the definition of "device" as a result of the solution's chemical action on the body to achieve one of its primary intended purposes, namely to neutralize acids and bases on the skin. Defendant also admits that, in contrast to the definition of "primary mode of action," which describes a "single mode of action" of a combination product, OSMP's review letter clarified for Prevor that the device definition's use of the phrase "primary intended purposes" means a device may have multiple primary intended purposes (none of which can be achieved "through chemical action within or on the body"). Defendant also admits that the studies described in Plaintiff's request for designation were not specifically identified in OCP's designation letter and were rejected for lack of relevance and validity in OSMP's review letter.

35.   Defendant denies the allegations of paragraph 35, except to admit that OCP's designation letter stated that a product is excluded from the FDC Act's definition of "device" if it "'achieve[s] its primary intended purposes through chemical action within or on the body,'" that DSW's solution "appears to have two primary intended purposes" and that, because the solution

"achieves its primary intended purposes, at least in part, through chemical action, it does not

meet the definition of device."  Defendant also admits that OSMP's review letter stated:

> In determining whether an article is a "device," FDA must consider
> whether or not the article achieves its primary intended purposes through
> chemical action within or on the body of man.  21 U.S.C. § 321(h).  As
> indicated by the use of the plural "purposes" in section 201(h) of the Act,
> 21 U.S.C. § 321(h), an article may have multiple primary intended
> purposes.  However, if an article depends, even in part, on chemical action
> within or on the body to achieve any of its primary intended purposes, it
> does not meet the definition of a device.  Section 201(h) clearly states that
> a device "does not achieve its primary intended purposes through
> chemical action within or on the body."

 Defendant further admits that it has made publicly available a draft guidance, "Classification of

Products as Drugs and Devices & Additional Product Classification Issues," dated June 2011.

36.  Defendant denies the allegations of paragraph 36, except to admit that, under the

FDC Act, a product is excluded from the definition of "device" unless, among other things, it

"does not achieve its primary intended purposes through chemical action within or on the body."

Defendant also admits that OSMP's review letter confirmed that, unlike a "primary mode of

action" analysis requiring FDA to select a single "mode of action" to be the "primary mode of

action" for purposes of assigning a combination product to a lead agency center, the definition of

"device" does not impose a requirement to choose one primary intended purpose from among

multiple "primary intended purposes" to determine whether DSW's solution is excluded from

the definition of "device."

37.  Defendant denies the allegations of paragraph 37, except to admit that FDA's

regulations state that a constituent part of a combination product has a "drug mode of action" if it

meets the drug definition in the FDC Act and it does not have a "biological product mode of

action" or a "device mode of action."  Defendant also admits that, for purposes of assigning a combination product to a lead agency center, if a constituent part of a combination product is excluded from the FDC Act's definition of "device," the constituent part cannot have a "device mode of action."  Defendant further admits that OSMP's review letter and OCP's designation letter concluded that DSW is a combination product because the canister meets the device definition and the solution meets the drug (but not the device) definition, and also that, when comparing the "mode of action" of the combination product's constituent parts, the solution's "drug mode action," not the canister's "device mode of action," is DSW's "primary mode of action."

38.  Defendant denies the allegations of paragraph 38, except to admit that Plaintiff's request for designation discussed several products all of which OCP, as stated in its designation letter, found to be different from DSW "in significant respects, including with regard to intended use, components, and/or ingredients."  Defendant also admits that OSMP's review letter contained the same conclusion and provided further explanation as to why the products referenced by Prevor are inapposite.

39.  Defendant denies the allegations of paragraph 39, except to admit that OSMP's review letter noted the differences between DSW and Reactive Skin Decontamination Lotion and explained that, in contrast to DSW's constituent parts, the Reactive Skin Decontamination Lotion has a device constituent in the form of a sponge applicator that is used to physically scrub chemicals from the skin and that, as Plaintiff's request for review acknowledged, could provide the product's "primary mode of action," when compared with the product's drug constituent (the lotion).  Defendant also admits that OCP's designation letter stated that the products discussed in

Plaintiff's request for designation are different from DSW "in significant respects, including with regard to intended use, components, and/or ingredients."

40.   Defendant denies the allegations of paragraph 40, except to admit that OSMP's review letter explained that, in contrast to DSW's solution which does not meet the definition of a combination product, the solutions in Silvaklenz Skin and Wound Cleanser Solution and heparin catheter lock flush solutions are comprised of constituent parts that make them drug-device combination products subject to a "primary mode of action" analysis, requiring FDA to select one "mode of action" (the "drug mode of action" or the "device mode of action") as the "primary mode of action" for the purpose of assigning the combination product to a lead agency center.  Defendant also admits that OSMP's review letter noted that OCP's decisions regarding blow fly larvae ("medical maggots") do not inform the assignment of DSW to a lead agency center for premarket review, in light of OSMP's current understanding of DSW and DSW's solution based on the information submitted by Plaintiff.  Defendant further admits that, as noted in OSMP's review letter, the other products referenced by Prevor are also inapposite, including the cited products that were not part of the administrative file and not properly before OSMP.

41.   Defendant denies the allegations of paragraph 41, except to admit that FDA determined that, based on the information in Plaintiff's request for designation, DSW's solution has two "primary intended purposes"; one of the primary intended purposes (washing harmful chemicals off the skin) is achieved through physical means, and the other of the primary intended purposes (neutralizing harmful chemicals on the skin) is achieved through chemical means.  Defendant also admits that FDA found that DSW's solution meets the definition of "drug," but that, because "chemical action within or on the body" is used in achieving the

12

"primary intended purposes" of DSW's solution, it does not meet the definition of "device." Defendant further admits that FDA concluded that DSW's drug constituent (the solution) provides the "primary mode of action" of the combination product because the solution (compared to the canister) is expected to provide a greater contribution to the overall therapeutic effects of the combination product. Defendant also admits that FDA further concluded that, because the combination product's "primary mode of action" is that of a "drug," it assigned DSW to CDER for premarket review to ensure product safety and effectiveness under the FDC Act.

42. Defendant repeats and realleges its answers in paragraphs 1 through 41.

43. Defendant denies the allegations of paragraph 43.

44. The allegations of paragraph 44 are legal conclusions to which no answer is required, but insofar as an answer may be deemed to be required, Defendant denies the allegations of paragraph 44.

45. Defendant repeats and realleges its answers in paragraphs 1 through 41.

46. Defendant denies the allegations of paragraph 46.

47. The allegations of paragraph 47 are legal conclusions to which no answer is required, but insofar as an answer may be deemed to be required, Defendant denies the allegations of paragraph 47.

48. Defendant repeats and realleges its answers in paragraphs 1 through 41.

49. Defendant denies the allegations of paragraph 49.

50. Defendant denies the allegations of paragraph 50.

51.  The allegations of paragraph 51 are legal conclusions to which no answer is required, but insofar as an answer may be deemed to be required, Defendant denies the allegations of paragraph 51.

52.  Defendant repeats and realleges its answers in paragraphs 1 through 41.

53.  Defendant denies the allegations in paragraph 53.

54.  The allegations of paragraph 54 are legal conclusions to which no answer is required, but insofar as an answer may be deemed to be required, Defendant denies the allegations of paragraph 54.

55.  This paragraph is Plaintiff's request for relief, as to which no answer is required, but insofar as an answer may be deemed to be required, Defendant denies that Plaintiff is entitled to the relief requested or to any relief whatsoever against Defendant.

Defendant further denies each and every allegation in the Complaint that has not heretofore been specifically answered or to which a response was otherwise made.

<u>FIRST AFFIRMATIVE DEFENSE</u>

The Complaint fails to state a claim upon which relief can be granted.

WHEREFORE, having been fully answered, Defendant requests that the relief sought be denied and that the Court grant Defendant its costs and such other and further relief as the Court may deem just and proper.

Respectfully submitted,

RONALD C. MACHEN JR.
United States Attorney

Of Counsel:

WILLIAM B. SCHULTZ
Acting General Counsel
Food and Drug Division
Office of General Counsel
U.S. Dep't of Health and Human Services

ELIZABETH H. DICKINSON
Acting Chief Counsel

ERIC M. BLUMBERG
Deputy Chief Counsel for Litigation

CLAUDIA J. ZUCKERMAN
Senior Counsel
Office of the Chief Counsel
Food and Drug Administration
10903 New Hampshire Avenue
White Oak 31, Room 4550
Silver Spring, MD 20993-0002

Dated: August 29, 2011.

TONY WEST
Assistant Attorney General
Civil Division

MICHAEL S. BLUME
Director

MARK L. JOSEPHS
Assistant Director

By:/s/ JOHN W. M. CLAUD
JOHN W. M. CLAUD
Trial Attorney
Consumer Protection Branch
U.S. Department of Justice
P.O. Box 386
Washington, D.C. 20044
202-307-5747

15